IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NOAH K.,[1]

    Plaintiff,

v.

ANDREW M. SAUL,[2]
Commissioner of Social Security,

    Defendant.

CIVIL ACTION

No. 19-2022-JWL

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602, and 1614(a) of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c(a) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff filed an application for SSI in October 2015. (R. 64). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff argues that the ALJ erred in deciding Plaintiff's condition does not meet the criteria of Listing 12.10 for Autism Spectrum Disorder; the record evidence does not support the ALJ's evaluation of the medical opinions of Dr. Espe, Dr. Neufeld, and Dr. Becker; and the ALJ failed to include all of Plaintiff's limitations in the residual functional capacity (RFC) assessed.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). Plaintiff has no past relevant work, so the ALJ decided this case at step five of the sequential process. The court addresses the issues in the order raised in Plaintiff's Brief.

## II.     Listing 12.10, Autism Spectrum Disorder

Plaintiff claims his condition meets the criteria of Listing 12.10 because he has a marked limitation in two of the paragraph B criteria of Listing 12.10 – interacting with others, and adapting or managing oneself. Plaintiff makes these assertions based upon a vocational evaluation by Ms. Hunt dated March 26, 2015 (R. 176-81), Dr. Neufeld's report dated February 6, 2015 (R. 294-99), an assessment by the Johnson County Community Developmental Disabilities Organization made for the Kansas Department for Aging and Disability Services dated June 17, 2015 (R. 308-13), a Disability Appeals

report dated February 24, 2016 (R. 242-47), and testimony of Plaintiff and his mother at the hearing. (R. 39-58).

The ALJ found that Plaintiff has a moderate limitation in interacting with others, and no limitation in adapting or managing oneself. (R. 21). Moreover, the ALJ explained the severity definitions for the paragraph B criteria, which is the degree of Plaintiff's ability to function in each area independently, appropriately, effectively, and on a sustained basis:

> A "mild limitation" means the claimant functions in this area independently, appropriately, effectively, and on a sustained basis. A "moderate limitation" means the claimant's functioning in this area independently, appropriately, effectively, and on a sustained basis is fair. A "marked limitation" means that the claimant's ability to function in a given area independently, appropriately, effectively, and on a sustained basis is seriously limited. An "extreme limitation" means that the claimant is unable to function in a given area independently, appropriately, effectively, and on a sustained basis.

(R. 20). The ALJ discussed Plaintiff's ability to function in each of these areas. Id. at 20-21.

As related to interacting with others, the ALJ noted that Plaintiff attends college at The University of Kansas (KU), resides in a dormitory with a roommate with whom he gets along well, that he attends clubs, and he does not shop independently but is learning to do so at school. (R. 20-21). He noted that Plaintiff plays games such as billiards and table tennis and "the record does not document the claimant having any serious problems in functioning socially when seeking treatment. For example, he is not noted to have had difficulty waiting in public areas, to behave inappropriately with office staff, or to be unable to form a therapeutic rapport with treatment providers." (R. 21). In light of the

5

ALJ's findings, Plaintiff does not explain how the alleged difficulties to which he points demonstrate that Plaintiff is <u>seriously limited</u> in interacting with others independently, appropriately, effectively, and on a sustained basis.  In fact, the ALJ fairly summarized the reports of Ms. Hunt and Dr. Neufeld, and the allegations of Plaintiff and his mother.  He accorded little weight to the opinions of Dr. Neufeld (R. 26) and found the allegations of Plaintiff and his mother "are not entirely consistent with or supported by the record." (R. 25).  Plaintiff has not shown error in the ALJ's analysis.

The court's consideration of the functional area of adapting or managing oneself is to a similar effect.  The ALJ noted the record does not document "serious or greater restrictions" in Plaintiff's "ability to perform routine activities of daily living, such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for his grooming and hygiene, using telephones and directories, and using a post office." (R. 20).  He explained:

> During a February 2015 consultative examination, the claimant "denied any difficulty in performing daily tasks of self-care ... and his mother similarly indicated that he completes such tasks without assistance.  He indicated that he assists in the completion of some household chores (e.g., getting the mail, butting [sic] away dishes, 'I vacuum,' etc.).  However, both he and his mother indicated that he continues to require supervision and training with regard to such activities (e.g., doing laundry)." (Exhibit 1F/3).  The claimant testified that, prior to his enrollment in college, he was generally independent in his activities of daily living.  He reported that he was able to perform routine household chores, including vacuuming, laundering clothes, and preparing meals.  With regard to meal preparation, the claimant described preparing meals for his family, such as a Mexican casserole, without assistance beyond reading the recipe.  He only reported needing assistance when first performing such household chores (Claimant's Testimony).

(R. 20).  Plaintiff's arguments do not demonstrate error in the ALJ's findings.

6

To the extent the evidence Plaintiff cites supports a different finding than that of the ALJ, the question for the court is not whether the evidence will support a different finding or even if the evidence <u>better supports</u> a different finding. Rather the question is whether the evidence supports the Commissioner's finding. Here it does. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).

## III.  Evaluation of Medical Opinions

Plaintiff argues the Commissioner's decision is not supported by the record evidence because "[t]he ALJ's analysis and treatment of the medical opinions of record is faulty and fails to adhere to the regulations propounded by the Commissioner." (Pl. Br. 13) (citing the ALJ's evaluation of the medical opinions of Dr. Espe, Dr. Neufeld, and Dr. Becker). As Plaintiff's argument suggests, the ALJ accorded great weight to Dr. Espe's treating source opinion and Dr. Becker's non-examining source opinion and little weight to Dr. Neufeld's non-treating source opinion. (R. 26). The ALJ "considered opinion evidence in accordance with the requirements of 20 CFR 416.927." (R. 22).

7

## A.     Standard for Evaluating Medical Opinions

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[3] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 416.927(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have

---

[3] The regulations define three types of "acceptable medical sources:"

    "Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

    "Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

    "Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

8

merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2019) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those

9

factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B. Analysis

The ALJ accorded great weight to the treating source opinion of Dr. Espe because he had a substantial treating relationship as Plaintiff's primary care physician, because his treatment records "do not document any objectively discernible abnormalities that would reasonably preclude all full-time employment," and because his opinion is consistent with both Plaintiff's testimony and Dr. Becker's opinion. (R. 26). Plaintiff argues that the ALJ ignored Dr. Espe's opinions that Plaintiff required social and occupational therapy and that autism "greatly affects" Plaintiff's abilities to communicate and to socially

interact. (Pl. Br. 13) (citing R. 317). The Commissioner argues that the ALJ is not required to reference everything in the record and in any case the ALJ assessed an RFC which accounted for Plaintiff's limitations in communicating and interacting, and explained why he found Plaintiff did not need additional job supports. (Comm'r Br. 12).

In the opinion at issue here, Dr. Espe stated that Plaintiff's impairment (autism) "greatly affects" both his ability to communicate and his ability to socially interact and results in a substantial impediment to employment. (R. 317). He opined that Plaintiff would need "social occupational therapy" to gain and maintain employment, and that he is mentally and physically ready for full time employment. Id. While Dr. Espe opined that Plaintiff's autism presented impediments to employment and that assistance would help him gain and maintain employment, he nevertheless opined that Plaintiff is ready for full time employment. The ALJ may, and did, rely on that opinion and provided four reasons, supported by the record evidence, to do so. Moreover, his decision explained his accommodation for Plaintiff's difficulties with communication and social interaction and his reasons to reject additional assistance or accommodation, such as a job coach. (R. 23-26).

The ALJ accorded little weight to Dr. Neufeld's opinion that Plaintiff needed additional assistance and accommodation such as a job coach because it is inconsistent with the weight of the evidence as a whole and "is simply inconsistent with the claimant's demonstrated abilities." (R. 26). Plaintiff argues that the "need for a job coach is reiterated throughout the record" (Pl. Br. 14), and Plaintiff's behaviors as recorded by the Johnson County Community Developmental Disabilities Organization

suggest a structured environment is necessary which in itself would preclude competitive employment. (Pl. Br. 14-15). The Commissioner argues that the ALJ explained his findings at length and that Plaintiff's argument cites other evidence in the record and asks the court to reweigh the evidence and reach a different conclusion. (Comm'r Br. 12-13).

The ALJ's findings regarding Dr. Neufeld's opinion are supported by the record. While weighing Dr. Neufeld's opinion, the ALJ explained:

> As is noted above, the claimant has demonstrated, both in a vocational rehabilitation setting and in his activities of daily living, that he is generally capable of functioning adequately with co-workers and peers. He has further demonstrated the ability to perform at least simple, routine, and repetitive tasks, including household chores and the basic activities needed to reside on the University of Kansas campus, provided he is able to learning [sic] by verbal instructions or by demonstration, rather than by means of written instructions.

(R. 26). Earlier in the decision, the ALJ had also discussed Plaintiff's alleged need for a job coach or for a structured environment:

> The presence of any greater functional limitations than the foregoing are not reasonably supported by the evidence. For example, the record does not document the claimant having persistent problems that would warrant a conclusion that he can only function in a highly supportive environment or that he requires the presence of a job coach during a job's probation period. Indeed, he required no such assistance during occupational therapy. Rather, he demonstrated the ability to appropriately ask for assistance from supervisors and co-workers. Furthermore, given the claimant's demonstrated ability to appropriately ask co-workers for assistance when he had questions during vocational rehabilitation, a finding that he is totally incapable of responding appropriately to even simple changes in the work environment is also unsupported; the problems he has demonstrated in this area are adequately accommodated for with a restriction to few, if any, workplace changes.

(R. 25).

Finally, Plaintiff argues the ALJ effectively accorded controlling weight to the opinion of the state agency psychologist, Dr. Becker, which is contrary to the general rule, and that even if that was not error, the ALJ erred in failing to account for Dr. Becker's findings that Plaintiff "would be moderately limited in maintaining his attention and concentration for extended periods; moderately limited in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms; and moderately limited in his ability to perform at a consistent pace without unreasonable number and length of rest periods." (Pl. Br. 15) (citing R. 79). The Commissioner argues that the ALJ provided sufficient reasons for according great weight to Dr. Becker's opinion. (Comm'r Br. 13). He argues that the moderate limitations to which Plaintiff refers in his Brief were a part of Dr. Becker's "Section I" ratings, but that the "Section III" narrative discussion is the psychologist's RFC opinion which the ALJ considers. Id. at 14. He argues that in any case, the Section I limitations to which Plaintiff refers were adequately accounted for in the RFC assessed by the ALJ which found Plaintiff more limited than did Dr. Becker. Id. The initial consideration report found Plaintiff "retains the ability to perform at least simple repetitive tasks." (R. 71, 80). Dr. Becker affirmed the initial assessment, noted that Plaintiff provided no new evidence, but explained that he had "added moderate limitation to interaction with the general public due to potential speech issues. Beyond this, initial is upheld as written." (R. 81).

The ALJ explained his evaluation of the state agency psychologists' opinions:

> In reaching the findings herein, the undersigned gives great weight to the reconsideration opinion of nonexamining State agency psychological consultant Mark Becker, Ph.D. (Exhibit 4A). As a State agency consultant, Dr. Becker is familiar with the disability determination process and the Regulations, including the terms of art and legal and medical standards set forth therein. Additionally, as a psychologist, he has specialized training and expertise that make him eminently qualified to render an opinion regarding the claimant's mental ailments. Most significantly, Dr. Becker based his opinion upon a comprehensive review of the record, including the claimant's longitudinal medical history and self-reported daily activities. His opinion is consistent with the same. Indeed, Dr. Becker's opinion is accompanied by a detailed narrative that explains what evidence he relied upon when rendering it. Although some evidence has been added to the record since Dr. Becker rendered his opinion, that evidence is cumulative of what was already in the record. That is, the additional evidence does not document an appreciable worsening of the claimant's condition since the State agency consultant rendered his opinion. Based upon the totality of the foregoing, the undersigned gives great weight to the opinion of Dr. Becker. By comparison, little weight is given to the initial determination opinion of nonexamining State agency psychological consultant Scott Brandhorst, Psy.D. (Exhibit 2A). Dr. Brandhorst's opinion was based upon a less complete review of the record than Dr. Becker's opinion. Additionally, Dr. Brandhorst did not include any social limitations, which are warranted for reasons explained in great detail above.

(R. 26). As part of the ALJ's detailed explanation of Plaintiff's social limitations, he had earlier explained,

> Given his overall resistance to change and demonstrated anxiety, particularly when first interacting with the consultative examiner, it is further prudent that his work environment has few, if any, workplace changes and require no more than occasional interaction with the general public. Given his good ability to interact with others in both school and occupational therapy settings, the undersigned finds that he can frequently interact with co-workers and supervisors.

(R. 25).

As the Commissioner suggests, the ALJ assessed a restrictive mental RFC for Plaintiff:

> He is able to understand, remember, and carry out simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; and with few, if any, workplace changes. He can tolerate occasional interaction with the public, and frequent interaction with co-workers and supervisors. He requires work that does not involve written instructions; however, he can perform work that involves verbal instructions or that can be learned by demonstration.

(R. 22) (finding no. 4, bolding omitted). This is a far more restrictive RFC assessment than that explained by Dr. Becker. Clearly, the ALJ did not accord controlling weight to Dr. Becker's opinion. As the Commissioner explained, even though the ALJ accorded great weight to Dr. Becker's opinion, it was not error for him to temper the effect of that opinion by assessing greater limitations than did Dr. Becker. (Comm'r Br. 10) (citing Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012)).

## IV. Failure to Include All Functional Limitations

In his final allegation of error, Plaintiff claims the ALJ failed to discuss or to include limitations in his RFC assessment regarding task completion and pace, or a need for assistance in performing activities of daily living, and this failure is error requiring remand. The Commissioner responded to these arguments:

> Plaintiff is mistaken to the extent he claims the ALJ did not account for any difficulties in completing tasks or keeping pace: not only did the ALJ limit Plaintiff to only the simplest of tasks, he also found Plaintiff could not perform work involving fast-paced production requirements. Nor should it make a difference that Plaintiff reportedly needed supervision or assistance with some activities of daily living in June 2015. This was before the SSI-relevant period beginning in October 2015, and later, according to Plaintiff's testimony, he was living independently in the dorms on a large university campus.

(Comm'r Br. 15) (citations omitted).

15

The court agrees with the Commissioner. The court has already quoted much of the ALJ's discussion relevant to accommodating "speed-related deficits," few if any workplace changes, and his finding of no basis to conclude Plaintiff would be off-task 15 percent of a workday. Moreover, as the Commissioner suggests, the ALJ also explained his findings that Plaintiff has no serious restrictions in daily activities, and his "activities of daily living are more consistent with the" RFC assessed than with disability. (R. 25). While there is record evidence cited by Plaintiff which might have been credited to support his arguments, substantial evidence supports the ALJ's findings and he explained his findings fully.

Plaintiff has demonstrated no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated November 20, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**